Okay, I think everybody is assembled. We have both counsel here. I think we do. Okay, we are here today. You are here today in front of the first district, first division of the first district appellate court of Illinois in the case of people of the state of Illinois versus Kenneth Durant. 1-21-1190. And what we're looking for is like 15 to 20 minutes apiece. If we unduly burden you with questions, we might give you a little more time, save some time for rebuttal. So let's hear from the appellate. May it please the court. Good afternoon, your honors counsel. My name is Chris Bendick from the office of the state appellate defender and I represent the appellant, Kenneth Durant. Kenneth Durant is serving a natural life sentence where recent controlling authority demonstrates his constitutional rights were violated by that illegal sentence. In 2022, the Illinois Supreme Court held in people. We know the facts very well. This is the second time around with the case. So the issue is what the Supreme Court has asked us to look at, right? In light of Stuart, what we're supposed to do with subsection A instead of subsection B. Right. Basically, whether the same logic should apply. And that's all we really want to hear about. So my question to you is in Stuart and in the state's briefs, they talk about the 3 factors that courts look at to determine whether an amendment is a clarification or a substantive change. I didn't see any response specifically to that, but I'd like you to respond. The 1st factor is whether the legislature expressed that it was clarifying the prior law. What's your response to that? The legislature did not specifically state that it was clarifying the prior law. However, we look at the time and circumstances as to the amendments and the time and circumstances are identical to the amendment to subsection B as a subsection A. And that's why the court in People v. O'Neill held that subsection A is to be treated the same way as subsection B after People v. Stuart. Okay, well, let's go to the 2nd factor. The 2nd factor is whether a conflict existed before the amendment was enacted. There was a conflict as to subsection B, Your Honor. There was no conflict specifically as to subsection A at that point. However, the legislature responded to that split in authority as explained in Stuart by clarifying both subsection B and subsection A in the identical manner when it made that 2021 amendment. And that's why in Stuart, the court found that it was a clarification and that the amendment that requires that the 1st predicate be for the age of 21 or older has always existed. That's what the legislature has always intended. And that's why Stuart held the way that it did. And that's why in People v. O'Neill and People v. Taylor, the 4th District Appellate Court, and in fact, the state itself conceded in O'Neill that subsection A is to be treated identical to subsection B. That a predicate that occurs before the age of 21 cannot be used by the state like it did here in Mr. Durant's case. Third factor, whether the amendment is compatible with reasonable interpretation of the prior law in its legislative history. And that it is reasonably compatible just in the same way as it was in Stuart that the court held in subsection B is to be considered the same way as subsection A. But if I read your brief correctly, it doesn't matter whether it's a substantive change or it's just something to clarify. You think your client should prevail either way, right? So, Your Honor, to separate out here, the statute was only clarified as to the age for the first predicate, 21. So that's why Stuart applies to subsection B and subsection A, and that's why this statute has always existed in this manner. But it was not until Stuart that we all realized that this statute is how it's always existed, that it does not allow the state to use an under 21 predicate. And so that, therefore, brings in the case law in our briefs as to when a court substantively narrows a criminal statute. Therefore, that's why it applies to Mr. Durant, who's on collateral of you, which is slightly different than the O'Neill and Taylor case. We'll admit that those were on direct appeal, and this is collateral. But when a court interprets a statute and narrows it substantively, that's why it applies on collateral of you. So I hope I've answered your question, Your Honor. Well, what I was getting at was the cases that you talk about toward the end of your brief, the Welch case and the Narvaez case. And you seem to indicate that it doesn't matter whether you consider it substantive or it's just clarifying. In your mind, it gets applied retroactively either way. Well, I think I want to clarify the clarification here is why the reason why Stewart applies and why the statute amendment applies to Durant, just like it did to Stewart, is that it was a clarification. It qualifies that the amendment 2021 qualifies as a clarification in response to this existing split. So that's why it was always like that in the statute, that the age for the first predicate had to be 21 or over. The reason why this is a narrowing of a criminal statute and the rule is substantive is because Stewart, O'Neill and Taylor narrowed that criminal statute by interpreting its terms. I hope I've answered your question now, Your Honor. No, not really. Okay. I might just be missing it. I'm not laying it on you. Yeah, I understand the interplay between the amendment, the existing split in Stewart. Stewart's reasoning as to it being only a clarification that this is how the statute, both subsection A and subsection B, have always existed. And then that being a narrowing, of course, because prior, we've all been interpreting it that you could have a predicate that was under 21, but we know post-Stewart, you cannot. So that's why Welch v. United States and Peeble v. Alberts apply, and that's why this applies to Durant on collateral review. Before this bill in July 2021, for a person to be, if you had committed a third-class ex-offense at 18 years old after having been separately convicted of two prior class exes offenses, that person necessarily had to be a juvenile at the time of the prior class ex offenses and could be sentenced to life in prison for natural life. That seems pretty substantive to me. That doesn't seem like anything that's clarifying when you change it to 21. And that did not bother the Illinois Supreme Court in Stewart because in Stewart, the same issue existed for subsection B. It required that the third offense be 21 or over. So, of course, the first two offenses would have been before the age of 21. But we know now, based on this clarification due to the 2021 amendment in Stewart, that those two priors cannot be under the age of 21. So the same issue that I think the state has highlighted in its brief that says exists with subsection A but did not with B is not true. It existed with both subsections. The statute has always prevented predicates below the age of 21. And that's the holding of Stewart, and that's what controls here. And that's why the state conceded in O'Neill, and that's why the Fourth District Appellate Court reaffirmed O'Neill and Taylor, even though it didn't technically apply in Taylor because the predicates there were all over the age of 21. Let me, hang on, hang on. I just have one more thing I want to get into, and then I'll get out of your way. I was looking in your reply brief for a response to the state's argument about people versus Richardson and people versus Grant. Do you have any position on that, on those cases? Those simply have no impact here whatsoever, even though those cases found that the statute survived constitutional muster. But what we have is we then have the 2021 amendments to both subsection A and subsection B identical. And then in response to that, we have Stewart, which based on Illinois Supreme Court precedent, we know that this was a mere clarification of these recidivist provisions. And so the mere fact that previously other challenges have been rejected to constitutionality have no impact here because we have this 2021 clarification by the legislature, hey, this is how the statute is always supposed to have been read. And that's what it is, and that's what Stewart interpreted subsection B and why in O'Neill and Taylor, the Fourth District Appellate Court and the state appellate prosecutor all agreed subsection A is to be interpreted in the identical way as subsection B. And that's why Kenneth Durant should have his natural life sentence vacated. And the state has not disagreed with our proposed relief here. It just disagrees that Stewart should apply to subsection A. So if this court does agree that subsection A should be interpreted the exact same way as subsection B after Stewart, just like it did in O'Neill and in Taylor, this court should reverse the denial of leave to file and remand for resentencing under the normal class X sentencing range. There's no concession here. So that made it that's a different situation when a party can see there. You have a footnote about it, but you're not making an argument that they can't. They're not stuck with that concession, are they? Yeah, I don't think I'm my reading as yours is, Your Honor, that collateral estoppel would not prevent the state here. But just, you know, obviously, the state appellate prosecutor felt as strong in that position that it was pretty clear cut and the appellate court agreed, obviously. But it's a different situation, so it doesn't really apply. You haven't talked about the 2015 amendment, which is to subsection A, and there was no subsection B at that time. Doesn't that put it in a different lane? Your question is when they the age of 18 for the third offense, a sense that that has no impact on the case here, Your Honor, because. You had this existing split in 2021. You have the legislature, then. Altering the language. And clarifying for everyone, hey. Subsection B and subsection a, this is what we've always intended. And in 2015, that was a substantive change, wasn't it? Yeah, in 2015. Right. I would say, yes, that would be a substantive change, Your Honor. So, and we don't have that here. So, and we don't have it again. B and a have kind of a different history to him. So, my question is how that history you keep saying, well, it's the same. It's the same, but there is a different history and they point that out. Why is that history not relevant? The history is not relevant here as to that 2015-16 change regarding the third instant offense. Because the order of all this happening is we've got this split that's existing on subsection B. And with subsection B. Then being amended by the legislature. To clarify both the subsection B and the subsection a at the exact same time in the exact same manner. There's language is the same. And then we have people be Stewart saying. This qualifies under a clarification. It's not a substantive change. This is a clarification as to how the. Recidivist statute 5-4.595 A and B. This is how it's always. This is how it's always been. And that's what they didn't say that is to be. I mean, if that's why we have this case. And that's why, but Stewart should apply in the exact same manner. Because there was no limitation in Stewart didn't say, oh, this only goes back to X year. No, they only talked about B, but they only talked about B. I mean, that's why this issue is here. So, as you noted, it's different than some of the other cases that have come before us. Not us, but been decided. Yeah, and that's but that's why I think that in O'Neill, I know there was a concession there, but there the appellate court also said rightly conceded because Stewart is so obvious in this that it does extend. All the way back to the origins of the statute and that's that's the only way to interpret Stewart and that it applies to both B and A. What would be the ramifications if B and A are interpreted differently so that B is interpreted according to Stewart and let's say A is interpreted according to what the state wants. Is there any ramifications from that kind of difference in these two subsections? You know, I haven't thought about there's any sort of equal protection issue between those two, your honor. But I don't I don't think that there's a way to separate A from B, given both the timing and the exact same language and the exact same manner in which they were clarified and all the timing surrounding all of this. So, and I'm not sure what the constitutional claim would possibly be and I'd have to think about that a little bit more, your honor. Okay, let's hear from State. Yes, thank you, your honors. May it please the court. My name is John Nowak. I'm an assistant state's attorney representing the people of the state of Illinois. Here, the legislator, when it changed the habitual criminal statute from requiring that the defendant be at least 18 years old at the time of the third offense to being 21 years old at the time of the first was a fundamental change and not a mere clarification that cannot be applied retroactively. And here it's important to go back and look at the legislative history of what is now subsection A and what is now subsection B. When this defendant committed his most recent Class X offenses in 2001 and was sentenced in 2005, the habitual criminal statute did not refer to age at all. In contrast, for mandatory Class X sentences for multiple Class I or Class II felons, like that's now in subsection B, it's always referred to the defendant being over the age of 21. But for the habitual criminal statute, for mandatory natural life, it's never referred to age at the time back in 2001, 2015, or 2005. But then in 2015, the legislature amended the habitual criminal statute, which is now subsection A, so that it expressly required that a defendant must have, quote, attained the age of 18 at the time of the third offense, end quote. In Stewart's terms, this might be a clarification of to what the legislature always intended for the habitual criminal statute, which is that at the time of the third offense, the defendant must be an adult, with the implication being the defendant did not need to be an adult for either of the first two offenses. And then in 2021, we get to the legislature making the amendments it did here, both A and B. And the amendment it made to A was a fundamental and substantive change. It deleted the requirement of being 18 at the time of the third offense and added the provision requiring that the first offense, quote, the first offense was committed when the person was 21 years of age or older, end quote. Again, in contrast, the statutory language for what is now subsection B for multiple time Class I or Class II offenders being subject to a Class X sentence, it is always referred to a defendant being over the age of 21 years. Back in 2005, when this defendant was sentenced, it had that language for mandatory Class X, but for habitual criminals like this defendant, it did not refer to age at all. And so with that, always having that over the age of 21 language in subsection B, when the legislature added the provision to both where it then requires that the first offense be committed when the person was 21 years of age or older. Well, here it's a substantive change because it's going from 18 at the time of the first to 21 at the time of 18 at the time of the third, rather, to 21 at the time of the first. Here, as Stuart rightly held, this was just a clarification for subsection B because it always had the over the age of 21 years language. It just never said whether that applies. The legislature, doesn't the fact that they changed it at the same time show that they always wanted these two to be in tandem? They didn't until now. And that's important to look to. If they had intended to be in tandem, it would have been in tandem before that. There would have been language about defendant over the age of 21 years, as it's always been for mandatory Class X sentences. It was never there until 2021 for the habitual criminal statute. It went from no age to being 18 at the time of the third to now being 21. So now they may be in tandem. Well, we know that, but why would the legislature do all this at once? And why shouldn't Stuart apply? Why shouldn't we say, relying on Stuart and the analysis made in Stuart in this case, I mean, the dissent in Stuart is by the wayside. But if you look at the majority opinion, wouldn't we be contrary to Stuart by ignoring how it reached its decision? No, you should pay attention to how it reached its decision, because if you follow how it reached its decision, you can come to only one conclusion here, and that this is a fundamental change and it cannot be applied retroactively, because this is not a clarification. Well, that's your position, but you have a difference of opinion, the two of you. Yes, but I'll explain why and go through the three factors. Stuart, as you noted Justice Hyman earlier, there are three factors that Stuart listed to determine whether it indicates a legislative intent to clarify. As Stuart recognized, there's a presumption that it's intended to be a change, but there are three circumstances that Stuart looks to, as courts always have, to determine whether instead of it being a substantive change, it's a clarification. First is whether the enacting body declared that it was clarifying a prior enactment. The defendant says, look at the circumstances, but that's not what this factor says. It says, did the enacting body declare, I mean, expressly state that it was clarifying a prior enactment. Even Stuart said that didn't happen here. There's no declaration that this was clarifying a prior enactment. For second, the second factor, and this applied in Stuart, but does not apply here, whether it's a conflict or an ambiguity that existed prior to the most recent amendment. Stuart recognized there had been, for subsection B, a conflict in the appellate court as to what age the defendant had to be. We knew, because the statutes always said over the age of 21, there was a conflict as to did that mean at the time of the first, time of the third, so there was a conflict for subsection B. But this defendant has to admit, and he did, there was no conflict for subsection A. And the third factor. He conceded it? You're saying he conceded it in his brief? I'm saying that he said, he said today that I thought I heard him say that there was no conflict for subsection A as to whether it applied to those that were, to whether there was a conflict as to how old you had to be at the time of the earlier offenses. Maybe, maybe I misheard him. Maybe he didn't, he didn't cite a case in his brief as to there being a conflict prior to this enactment. But in any event, there was no conflict. If he didn't concede it, which we'll find out, your response is? There's, there's, there was no conflict for subsection A. Okay. There's no case law to support that. But there was, so you're saying the difference between that and Stewart is the fact that in Stewart there was this difference of opinion. Yes, there was a conflict as to subsection B for mandatory class of sentencing. Yes, there was a split between Reed and Miles. And so there was that. And so, and then also whether the amendment, the third factor is whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history. And again, the statute for subsection B always had over the age of 21. And so Stewart held, this was just a clarification that what that really meant was what they added was that now the defendant has to be the first offense committed when the defendant was 21 years of age or older. That reasoning does not apply. None of these three apply here. The legislature did not declare it was clarifying a prior enactment as to subsection A. There was no conflict or ambiguity regarding that existed prior to the amendment. And the amendment is not consistent with a reasonable interpretation of the prior enactment and its legislative history. And that requires looking at the legislative history. It says it right there, the prior enactment. What was here before the amendment? And what was here before this 2021 amendment? It literally said anyone who quote, having attained the age of 18 at the time of the third offense is a judged and habitual criminal and shall be sentenced to a term of natural life imprisonment. That is the prior enactment. That's part of this legislative history. And when it made this, the legislator made this amendment in 2021, it struck the language in A5 of the having attained the age of 18 at the time of third offense. It struck that and then added for E about the first offense was committed when the person was 21 years of age or older. There's simply no way to reconcile and say that that is simply a reasonable interpretation of the prior enactment. But there's another way to go about this. The fact that they were simultaneous and identical shows that the legislator intended and its purpose was the same for both. And that what this argument does is it initiates that reasonable interpretation that courts give to statutory enactments. So you're saying we shouldn't look at that particular way of statutory interpretation, but another. And why should we ignore that this shows an intent and purpose that it be the same? You shouldn't ignore it. And there is an intent and purpose. They'd be the same going forward. Absolutely. Going forward, that is literally what the statute says. And we agree. But looking backwards, it's presumed that it wouldn't apply retroactively. The only reason that Stewart held that it did for subsection B is because it held it wasn't a substantive change at all to B, but was simply a clarification. But there's no way to frame the Stewart language and put that and overlay that over subsection A. They are now intended to be the same going forward. But that was never the case in the past. In 2001, when he committed the offense, in 2005 when he was sentenced, the habitual criminal statute said nothing about the age of the offender. Well, the mandatory class X always had that over the age of 21. Now they've been unified. But up until 2021, they were quite different. And again, talking about O'Neill and the concession there, and I believe I did hear this part at least correctly. Defendant's not pushing his collateral estoppel argument, nor should he. Tenor itself that he cites in the footnote makes clear many reasons why that doesn't apply in criminal cases. And that being because the state may not present its cases effectively or persuasively in one appeal as it does in another. And also that there's a public interest in having a correct interpretation of the law. And defendant talks about this being that they're treated in an identical manner, which I think is where you're going, Justice Hyman. But again, as I've said before, just to reiterate, they've never contained identical language until now. Prior to 2021, it was either over the age of 18 at the time of the third or no age requirement at all for mandatory natural life. Whereas for mandatory class X, it's always said over the age of 21. What about the concern that some might have that there are a lot of Kenneth Durants out there in the prison population that have been given a life sentence and to, you know, not go that way, they're going to be marooned there forever. You brought up, I brought up earlier, and you could talk about it here, the Richardson and Grant cases that you cited to in your brief. Right. And that's always a consequence when there's a substantive change in the sentencing law. And that's what the court recognized in Richardson and what the court recognized in Grant. Grant was specific to sentencing. And that there's always going to be this demarcation when there's a substantive change in the statute. It has to start somewhere, right? It has to start somewhere. And this is the line. And this has always been the rule of law in Illinois is that substantive statutory or sentences substantive sentencing changes are not applied retroactively. And again, Stewart didn't grapple with that because they held for subsection B. It was just a clarification. So there's been no change at all. And so this court, because it's a substantive change, it cannot be replied retroactively under Richardson and Grant. Does the fact that Illinois has gradually changed, as has the United States with Miller v. Alabama, and Illinois has been in the forefront of treating juveniles different than adults. And all this does is do more of that same thing. And Miller v. Alabama wasn't until 2012. So it would appear that, again, that if one is going to be applied to B as applied before, so should A. Because it's a juvenile. Because of the topic and the importance and what the legislature has said about juveniles and adults being treated differently. Your Honor, I believe that's why the legislature clarified the statute in 2015 to make sure that it only applied to those who are over the age of 18 at the time of the third offense. Just to make sure that it wouldn't apply because that came after all the amendments to the Juvenile Court Act. And there was so there was the recognition then to make sure. And here again, this is going forward. And there's always been a difference here between a habitual criminal who has committed at least three prior class X offenses and those that have committed three prior class one or class two offenses, which is now in subsection B. The legislature has reasonably determined that those who have committed three or more class X offenses are inherently more dangerous and more deserving of a harsh punishment, such as natural life in prison, as opposed to those who have committed multiple class one or class two offenses. And again, that's always been the case. That's why the class one or class two multiple offenders has always included the over the age of 21 language. Okay, let's hear some rebuttal. To start with, Your Honor, the state is just not correct here regarding subsection A and subsection B being different as to the first predicate. Both statutes have always been silent as to the first predicate. And that's the whole point here as to why Stewart applies with equal force as to subsection B as it does to subsection A. The state's also incorrect that there's only three factors you consider as to whether a amendment is a clarification or a substantive change. In fact, in K. Miller, the Illinois Supreme Court adopted language that said the time and circumstances surrounding the enactment of the amendment may indicate the change wrought by the amendment was formal only. And that the legislature intended merely to interpret the original act. So, of course, what happened here, because there was a split as to subsection B at the time, the legislature made identical amendments to subsection B and subsection A as to the first predicate. And that's why Stewart applies with equal force to subsection A as it did to subsection B. And I think that covers everything from the state's argument here that that is why subsection A should be treated the exact same way after Stewart as subsection B. And that's why this was a clarification and why it applies to Mr. Durant. Okay, I'd like to thank both sides for their briefs and argument. This is obviously an unusual situation. Here we go from a Finley to something that could, you know, go 360 degrees around. It's unusual, but we appreciate your input and we will get together and be out with an opinion in due time. Thank you very much. We are adjourned.